LILLIAN ZUCKER, as Administratrix of the Estate of MARVIN J. ZUCKER, Deceased, Plaintiff, *v.* WILLIAM B. BAKER et al., Defendants.

Supreme Court, Special Term, Queens County, June 20, 1962.

*Fuchsberg & Fuchsberg* (*Murray J. Kaplan* of counsel), for plaintiff. *Thomas F. Keane* for Massachusetts Institute of Technology, defendant.

GEORGE P. STIER, J. This is a motion by the plaintiff to confirm the report of HON. SAMUEL S. TRIPP, Special Referee, dated May 9, 1962, to whom was referred motions by the defendant Massachusetts Institute of Technology (hereinafter referred to as M. I. T.) to vacate the service of process upon it.

After summarizing the evidence adduced at the hearing, the learned Special Referee reported as follows:

" Basically there is no dispute between the parties with respect to the facts as I have outlined them. The question presented, then, is whether on these facts the activities of M. I. T. in this state are sufficient to subject that corporation to

the jurisdiction of our courts and, if so, whether the defendant Baker was its managing agent within the meaning of subdivision 3 of section 229 of the Civil Practice Act.

" There is no precise measure of the nature or extent of local activities that render a foreign corporation amenable to process in New York and each case must be decided on its own particular facts. (*Sterling Novelty Corp.* v. *Frank & Hirsch Distr. Co.,* 299 N. Y. 208.) As was so aptly stated by Judge LEARNED HAND in *Hutchinson* v. *Chase & Gilbert,* 45 F. 2d 139, 142: ' It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass.'

" The trend in the decisions of the United States Supreme Court has been in the direction of expanding the area in which a State may exercise jurisdiction over a foreign corporation, although it left to the States to determine the jurisdiction upon the particular facts in each case. (*Hanson* v. *Denckla,* 357 U. S. 235; *McGee* v. *International Life Ins. Co.,* 355 U. S. 220; *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316.) In the last-cited case the test adopted by the court for *in personam* jurisdiction of a foreign corporation was whether the corporation had certain ' minimum contacts ' with the State, such that the maintenance of the suit did not offend ' traditional notions of fair play and substantial justice.' The applicable test in New York, however, continues to be, according to a recent decision of the Appellate Division of the First Department (*Fremay, Inc.* v. *Modern Plastic Corp.,* 15 A D 2d 235, 240) ' the classic " presence " test, as found in the leading cases (e.g., *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259).'

" In brief, the facts in *Tauza* were that the defendant, a Pennsylvania corporation with its principal office in Philadelphia, had a branch office in New York in charge of one Peterson, whose duties were described as those of a sales agent. He had eight salesmen under him who were subject to his orders and a suite of offices in the Borough of Manhattan was the headquarters of the sales agent and his subordinates. The name of the defendant, with the name of the sales agent, was on the door, and in addition to the salesmen other employees, presumably stenographers and clerks, occupied the office. The duty of Peterson and his subordinates was to procure orders which were not binding until approved or confirmed by the home office in Philadelphia. All payments by customers were made to the treasurer in Philadelphia and the salesmen were without authority to receive or indorse checks. A bank account, in the name of the company, was kept in New York subject to

Peterson's control, but the payments therefrom were for salaries of employees and for petty cash disbursements incidental to the maintenance of the office. The defendant's coal yards were in Pennsylvania and it was from there that shipments were made in response to orders transmitted from New York ' not on isolated occasions, but as part of an established course of business. In brief, the defendant maintains an office in this state under the direction of a sales agent, with eight salesmen, and with clerical assistants, and through these agencies systematically and regularly solicits and obtains orders which result in continuous shipments from Pennsylvania to New York ' (p. 265). The court held, at page 266: ' To do these things is to do business within this state in such a sense and in such a degree as to subject the corporation doing them to the jurisdiction of our courts.'

" Except that in the case at bar we are dealing with the solicitation in New York of capital gifts to be transmitted to Cambridge, Massachusetts, for the improvement there of a university rather than the solicitation of orders of coal for the profit of a foreign commercial corporation and there was no bank account maintained in New York by the university, the facts at bar are substantially similar to those in *Tauza*.

" I do not believe that the maintenance of a bank account in New York is conclusive; nor are the norms for doing business sufficient to bring a foreign corporation within the jurisdiction of the New York courts essentially different between nonprofit and commercial corporations. While the mere solicitation of business for an out-of-State concern and nothing more is not enough to constitute doing business in this State (*Miller* v. *Surf Props.*, 4 N Y 2d 475, 480), the Court of Appeals pointed out in *Miller*, by citation from *International Shoe Co.* v. *State of Washington* (326 U. S. 310, 314) that ' solicitation * * * plus some additional activities there are sufficient to render the corporation amenable to suit '.

" Here there was no mere solicitation of gifts in New York by the development office in Cambridge through the mails or alumni and friends directed from Cambridge. Here there was a New York regional headquarters office set up in the Spring of 1960 as the nerve center of the drive in the metropolitan area, staffed by stenographers and clerks. Through this office, in charge of Mr. Baker, who was paid directly by M. I. T., there was a systematic and regular solicitation of funds, securities and pledge cards which were delivered to the New York office to be transmitted to the national headquarters at Cambridge.

The New York office was leased by M. I. T. and the furniture purchased by it through the professional fund raisers in charge who hired the clerical and stenographic staff paid by the university. The defendant Baker could discharge members of the staff and replace them at salaries he suggested to the development office in Cambridge. The name ' M. I. T. Second Century Fund ' appeared on the door of the New York office, on the directory of the building and on letterheads. It was listed in the Manhattan telephone directory and, as of the date of the hearing on March 21, 1962, was still listed in the current directory. While the names of Baker and Kersting did not appear on the letterheads and the office door, they were included in the directory of the building in which the regional office was located.

'' Upon the evidence in this record, a finding is warranted that M. I. T. was present in New York ' not occasionally or casually, but with a fair measure of permanence and continuity ' since June 1960 (*Tauza*, p. 267). The contention urged in the brief of M. I. T. that such a finding may place it in a position of having violated certain statutory provisions of New York Law is a *non sequitur*. As pointed out in *Tauza* at page 267 : ' But the problem which now faces us is a different one. It is not a problem of statutory construction. It is one of jurisdiction, of private international law (Dicey Conflict of Laws, pp. 38, 155). We are to say, not whether the business is such that the corporation may be prevented from being here, but whether its business is such that it *is* here.'

'' The fact that M. I. T. solicited donations in New York for the advancement of its educational, scientific and research purposes in Massachusetts and that no such activities were performed in New York is immaterial. Vast spending is ' The Price of Science ' (Editorial, *New York Times*, May 5, 1962, p. 26) and the gathering of the wherewithal is as integral a part of an institution such as M. I. T., as the very activities for which it was organized and which it seeks to improve.

'' I have no hesitancy in finding that at the time of the service of process on March 20, 1961, the defendant Baker actually was functioning as the number one man in charge of the New York office of M. I. T. Second Century Fund. As a staff member, paid by M. I. T., he was then clothed with sufficient general power, involving the exercise of judgment and discretion in the headquarters' office of which he was in charge, to constitute him ' a managing agent ' within the purview of subdivision 3 of section 229 of the Civil Practice Act. Although no

proof was offered as to any effort made to serve persons mentioned in subdivisions 1 and 2 of that section, this, as was noted in *Hardaway* v. *Illinois Cent. R. R. Co.* (9 Misc 2d 705, 708) ' would have been futile here and " due diligence " only means a search for the possible. Thus, the absence of such a showing is immaterial.' "

The court agrees with the foregoing views and finds that they are fully supported by the record.

*Kane* v. *Stockbridge School* (33 Misc 2d 103), relied upon by the defendant M. I. T., is inapposite. In that case service of the summons was effected upon a member of the board of trustees of an educational institution incorporated under the Laws of Massachusetts, at an apartment in New York City, which he occupies while visiting the city. The only activity shown by the papers to be conducted by the school in this State was the holding of interviews with prospective students or their parents at this apartment, which was listed in the Manhattan telephone directory under the school's name. The court held that such interviews were " tantamount to no more than the solicitation of business for an out-of-State concern. Such activity has been held insufficient to constitute the doing of business in this State (*Miller* v. *Surf Props.*, 4 N Y 2d 475). In the absence of evidence of the conduct by the defendant of any activity other than disclosed by the plaintiffs, there is no material issue of fact presented on this application which warrants or requires a hearing (cf. *Smith* v. *Aztec Resort Motel*, 21 Misc 2d 548).''

The evidence in the instant case, as analyzed by the learned Special Referee, discloses activity on the part of M. I. T. in New York far more extensive than mere solicitation of funds. Accordingly, the report and recommendations of the Special Referee are in all respects confirmed.

The motion of the defendant M. I. T. to vacate the substituted service of process, pursuant to section 253 of the Vehicle and Traffic Law, is, accordingly, granted for failure of proof, and the motion of said defendant to vacate the service of process on March 20, 1961 by leaving a copy thereof with the defendant Baker, is denied, with leave to the defendant M. I. T. to serve its answer within 10 days after the service of a copy upon its attorney of the order to be entered hereon with notice of entry thereof.